# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARY K. VIEGELAHN, TRUSTEE, | § | |
| | § | |
| *Appellant*, | § | |
| | § | |
| v. | § | Civil Action No. SA-10-CV-00767-XR |
| | § | |
| PHILLIP BRIAN ESSEX; VIRGINIA MAY ESSEX, | § | |
| | § | |
| *Appellees*. | § | |

**ORDER**

On this date, the Court considered Appellant Mary K. Viegelahn's, Trustee, appeal from an order of the Bankruptcy Court confirming Appellees Phillip Brian Essex and Virginia May Essex's Chapter 13 Plan. Having considered the record, applicable law, and the parties' arguments, the Court REVERSES the Bankruptcy Court's order.

**Background**

On January 5, 2010, Appellees filed a petition for relief under Chapter 13 in the United States Bankruptcy Court for the Western District of Texas. Appellant filed an Objection to Confirmation of Appellees' Original Chapter 13 Plan claiming in part that the Plan was not filed in good faith according to 11 U.S.C. § 1325(a)(3). Appellant's Br. at 7-8. Appellees then filed an Amended Chapter 13 Plan ("Plan") that included changes necessary for the Plan to meet feasibility requirements but did not address the good faith concerns that the Appellant raised.

The Plan "calls for payments of $3,717.00 for a period of sixty months and proposes to pay approximately a 1% dividend to non-priority unsecured creditors with the dollar amount to be paid

1

to non-priority unsecured creditors a total of no less than $1,956.41." Appellant's Br. at 10. The basis of the good faith claim relates to the fact that in the Plan, "the debtors [Appellees] were proposing to retain a homestead with a mortgage of approximately $656,000.00 . . ." in which the Appellees have virtually no equity. *Id.* at 7, 24. To do so, Appellees would pay $6,770.00 towards the mortgage each month. *Id.* at 19. This amount constitutes 51% of Appellees' monthly income and represents a mortgage payment that "is over four times the amount of the IRS standard for housing <u>and</u> utilities for a family of five in San Antonio, Texas." *Id.* (emphasis included in original). In arguing that this proposal was not made in good faith, Appellant draws attention to the steep contrast between the high monthly mortgage payments and the low monthly dividend (1%) that Appellees propose to pay to unsecured creditors. Furthermore, it should be noted that before purchasing the home in 2006, Appellees had not paid income taxes for the years of 2003, 2004, or 2005 and continued this trend for 2006 as well. As a result of this failure to pay taxes, the Appellees owe the IRS $256,498.97, of which $136,681.46 is an unsecured claim. Based on the 1% dividend proposed in Appellees' Plan, the IRS will receive $1,366.82 of the unsecured debt.

Despite Appellant's objection, the Bankruptcy Court confirmed the Plan, citing the eligibility limits of 11 U.S.C. § 109(e) in conjunction with the Chapter 13 purpose of allowing debtors to retain their homes during bankruptcy. As the Court stated,

> "We already know that we have a statute that's designed to help people keep their homes, and we already know that Congress also, de facto, put an upper limit on what kind of a home you can keep because they put an upper limit of how much secured debt you can take into Chapter 13. So, that's the de facto number. The de facto number for how much house can you have in Chapter 13 is set by the eligibility limits."

Ct. Tr. at 34-35. In response to the Court's Order confirming the Plan, Appellant filed an appeal and seeks reversal of the Order and denial of confirmation.

## Legal Standard

**Standard of Review**

When a district court reviews the decisions of a bankruptcy court, "[f]indings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*." *Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 346 (5th Cir. 2008). As the Fifth Circuit has stated, "[w]hether a petition was filed in good faith is a question of fact that we review for clear error." *Suggs v. Stanley (In re Stanley)*, 224 F. App'x 343, 345-46 (5th Cir. 2007). "'When a finding of fact is premised on an improper legal standard, or a proper one improperly applied,' however, that finding is reviewed *de novo*." *Id.* at 346 (quoting *In re Missionary Baptist Found. of Am.*, 712 F.2d 206, 209 (5th Cir. 2001)).

**Good Faith**

According to Section 1325(a)(3) of the Bankruptcy Code, "the court shall confirm a plan if . . . the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). Importantly, "[i]n proceedings to confirm a plan, the debtor has the burden of proving good faith . . . ." *In re Stanley*, 224 F. App'x at 346. To determine whether the debtor has sufficiently satisfied this burden, bankruptcy courts employ a "totality of the circumstances" test. *Id.* The Fifth Circuit test considers these factors: "(1) 'the reasonableness of the proposed repayment plan,' (2) 'whether the plan shows an attempt to abuse the spirit of the bankruptcy code,' (3) whether the debtor genuinely intends to effectuate the plan, (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities, (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay, (6) whether the plan reflects the debtor's ability to pay, and (7) whether a creditor has objected to the plan." *Id.* (citing *In re Chaffin*, 816 F.2d 1070, 1070, 1073-74 (5th Cir. 1987), *modified*, *In re Chaffin*, 836 F.2d 215, 216-17 (5th Cir. 1988).

In applying the totality of the circumstances test, a court need not make an explicit "'formulary statement' that it considered the relevant facts 'individually and cumulatively.'" *Id.* at 347 (quoting *Early v. Packer*, 537 U.S. 3, 9, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). Instead, "'it suffices that that was the fair import of the [lower court's opinion].'" *Id.* (alteration in original) (quoting *Early*, 537 U.S. at 9).

## Analysis

**Standard of Review**

The parties disagree as to what standard of review the Court should apply in this case. Appellees claim that by confirming the Plan and overruling Appellant's good faith objection, the Bankruptcy Court made a finding of fact and therefore, this Court should review the decision for clear error. Appellee's Br. at 9-11. To support this claim, Appellees point to the case of *Suggs v. Stanley* in which the Fifth Circuit considered the appropriate standard of review for a good faith determination made by a bankruptcy court. *In re Stanley*, 224 F. App'x 343. The district court in *Suggs* decided that *de novo* review was necessary because the bankruptcy court had improperly performed the "totality of the circumstances" test in finding that the plan had been proposed in good faith. *Id.* at 347. The Fifth Circuit disagreed, however, and held that the bankruptcy court had satisfactorily applied the test and as a result, its factual finding of good faith was entitled to a clear error review. *Id.* Appellees urge this Court to adopt the same reasoning as *Suggs* and to find that the Bankruptcy Court's holding is a factual finding that should be given a clear error standard of review.

Conversely, Appellant asserts that although the good faith objection was overruled, the Court reached its conclusion without making any findings of fact. Recognizing that once a Section 1325(a)(3) objection is raised, it is the debtor's burden to show that the plan was proposed in good faith, Appellant argues that Appellees presented no evidence to refute the good faith objection.

Therefore, Appellant claims, the Appellees provided the Bankruptcy Court with no basis for making a finding of fact related to good faith. As Appellant states, "No witnesses were ever sworn in to give testimony and no evidence was presented or admitted." Appellant's Br. at 3. Rather, the Court overruled the good faith objection using 11 U.S.C. § 109(e). Therefore, Appellant argues that by deciding the issue on this basis, the Bankruptcy Court avoided making any findings of fact concerning the Appellees' good faith and therefore, the decision should be reviewed *de novo*.

To support this argument, Appellant urges this Court to consider a recent holding of the Bankruptcy Court for the Northern District of Texas in the case of *In re Owsley*. 384 B.R. 739 (Bankr. N.D. Tex. 2008). Referring to the debtor's burden of showing good faith, the Court in that case stated that "[i]t is difficult, if not impossible, for a debtor to meet this burden without putting on evidence. Usually, that evidence comes in the form of the debtor's testimony. No such evidence was given here. Consequently, the debtors did not satisfy their burden on the good faith issue." *Id.* at 751. Appellant asserts that the same reasoning is applicable in this case. Because the debtor did not provide the Bankruptcy Court with evidence in response to the good faith objection, Appellant claims that it was impossible for the Court to make a factual finding of good faith. Instead, Appellant argues, the Bankruptcy Court's order overruling Appellant's objection was based on a legal conclusion arising from an unprecedented interpretation of Section 109(e) and thus, should be given a *de novo*, rather than a clear error, review.

This Court agrees with the Appellant. Although the Bankruptcy Court considered the facts as presented by the parties' attorneys during the hearing, it ultimately confirmed the proposed Plan based on its interpretation of Section 109(e) eligibility limits in conjunction with the underlying purpose of Chapter 13 to allow debtors to keep their homes. In doing so, the Bankruptcy Court overruled the good faith objection based on a legal conclusion rather than on facts gleaned from

evidence presented by the Appellees. Thus, the *Suggs* holding is not determinative in this case and the order of confirmation is subject to a *de novo* standard of review.

**Good Faith**

Many courts disagree on what constitutes a violation of Section 1325(a)(3), particularly when the section is read in conjunction with Section 1325(b). While section 1325(a)(3) concerns whether ". . . the plan has been proposed in good faith and not by any means forbidden by law," Section 1325(b)(3) contemplates the determination of "[a]mounts reasonably necessary to be expended" by the debtor as it essentially factors into the overall "disposable income" calculation outlined in 1325(b)(2). 11 U.S.C. § 1325(a)(3), (b)(3). Section 1325(b)(3) provides that "amounts reasonably necessary to be expended" should be determined for debtors of certain income levels in accordance with 11 U.S.C. 707(b)(2)(A) - (B) which outlines the "means test" promulgated under the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 ("BAPCPA"). Section 707(b)(2)(A)(iii)(II) states that

> "[the] debtor's average monthly payments on account of secured debts shall be calculated as the sum of – . . . . any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and debtor's dependents. . . ."

11 U.S.C. § 707(b)(2)(A)(iii)(II). Thus, Section 707(b)(2)(A)(iii)(II) places no reasonableness requirement on the monthly payments necessary to "maintain possession of the debtor's primary residence." *Id.* Rather, any amount necessary to keep the residence is allowed by Section 707 and as a result, is considered an "amount[] reasonably necessary to be expended" under Section 1325(b)(3). *Id.*; 11 U.S.C. § 1325(b)(3).

As a result of this statutory language and the absence of a "reasonableness" component within Section 707(b)(2)(A)(iii)(II), courts have had difficulty determining whether a debtor's proposed

monthly expenditures can be lawful under Section 1325(b)(3) yet constitute a violation of good faith under Section 1325(a)(3). During the confirmation hearing in this case, the Bankruptcy Court agreed that the proposed housing expenses in the Appellees' Plan comply with Section 1325(b)(3). Ct. Tr. 19. However, because the Court chose to overrule the good faith objection using Section 109(e), it did not reach the difficult question of whether the proposed plan nonetheless violated Section1325(a)(3).

Appellant implores this Court to make that finding and to follow a line of cases from bankruptcy courts around the country holding that compliance with 1325(b)(3) is not determinative of compliance with 1325(a)(3). *See In re Sandberg*, 433 B.R. 837, 845-46 (Bankr. D. Kan. 2010) ("'Notwithstanding the fact that the Debtors are entitled to account for the boat payments when calculating their disposable income under the means test, confirmation of a plan proposing to retain the boat is subject to the good faith test under 11 U.S.C. § 1325(a)(3). . . .'") (quoting *In re Hylton*, 374 B.R. 579, 586 (Bankr. W.D. Va. 2007)); *In re Williams*, 394 B.R. 550, 572-73 (Bankr. D. Colo. 2008) (". . . a debtor who deducts substantial amounts of secured debt for luxury items on Form 22C may technically comply with § 1325(b), but be unable to demonstrate that a plan offering only minimal or no payments to unsecured creditors was proposed in good faith."); *In re Devilliers*, 358 B.R. 849, 867 (Bankr. E.D. La. 2007) ("This Court finds that strict and technical compliance with the means test does not necessarily satisfy any debtors' burden of good faith. Determining whether a plan is proposed in good faith requires an analysis of the totality of the circumstances.") *In re Martin*, 373 B.R. 731, 736 (Bankr. D. Utah 2007) ("Simply because an item is an allowable expense on Form B22C does not shelter it from scrutiny under the Court's good faith analysis. Section 1325(a)(3) . . . is distinct and independent from the requirements of § 1325(b) . . . ."); *In re McGillis*, 370 B.R. 720, 750 (Bankr. W.D. Mich. 2007) ("Section 1325(b) is a hazard, not a harbor. Its avoidance does not

mean clear sailing. Rather, all debtors still must establish that their plans exhibit the good faith demanded by Section 1325(a)(3).").

On the other hand, Appellees urge the Court to adopt the reasoning that expenditures in compliance with Section 1325(b)(3) automatically qualify as expenditures in compliance with Section 1325(a)(3) as long as no additional instances of bad faith are alleged. *See In re Faison,* 416 B.R. 227, 231-32 (Bankr. E.D. Va. 2008) ("The Court will not find that the Debtor acted not in good faith by doing what Congress has allowed in BAPCPA, even if the expenses taken result in a lower dividend to unsecured creditors than they would receive if the Debtor were forced to relinquish property that is worth far less than the debt securing it."); *In re Winokur*, 364 B.R. 204, 206 (Bankr. E.D. Va. 2007) ("If the sole objection to the debtor's good faith is that the debtor proposes to pay the amount Congress requires by the mathematical formula, the debtor has complied with the good faith requirement. He has done everything Congress asked him to do."); *In re Farrar-Johnson*, 353 B.R. 224, 232 (Bankr. N.D. Ill. 2006) ("If the reasonable necessity of a debtor's expenses is no longer relevant, then plainly the debtor's 'good faith' in claiming them cannot be relevant. Disposable income is 'determined under section 1325(b) rather than as an element of good faith under section 1325(a)(3).'") (quoting *In re Barr*, 341 B.R. 181, 186 (Bankr. M.D.N.C. 2006).

In light of the Fifth Circuit precedent of applying the "totality of the circumstances" test to decide questions of good faith, overruling Appellant's Section 1325(a)(3) objection solely on the basis of whether Appellees' proposed plan complies with Section 1325(b)(3) would be improper and would render Section 1325(b)(3) superfluous. However, to find that the Appellees proposed their plan in bad faith even though the housing expenses comply with Section 1325(b)(3) would also be inconsistent. In attempting to resolve this potential conflict within the statute, this Court finds the approach taken in *In re Owsley* to be persuasive. 384 B.R. 739 (Bankr. N.D. Tex. 2008). In that case,

the Court concluded that "expenses deemed to be 'reasonably necessary' under subsection (b)(3) are presumed to be asserted in good faith under subsection (a)(3). The presumption of good faith can be negated by aggravating circumstances, an example of which might be a debtor's deduction of an ownership expense for a luxury vehicle purchased on the eve of bankruptcy." *Id.* at 750. Under this approach, the fact that Appellees' proposed monthly mortgage payments are lawful under Section 1325(b)(3) is important yet constitutes only one factor to be considered in addition to any "aggravating circumstances" that might arise within the overall "totality of the circumstances" test.

Appellant argues that there are aggravating circumstances in this case. Specifically, Appellant points to the fact that prior to purchasing their home, Appellees had not paid income taxes for three years. As Appellant states, ". . . the debtors clearly made the choice to live in a luxury home rather than pay their income taxes. . . The trustee questions whether the debtors living in a $600,000.00 home while paying next to nothing on $136,681.46 of unsecured tax debt is the bargain that Congress intended between debtors and unsecured creditors." Appellant's Br. at 21. Furthermore, the Appellant points to recent cases in which bankruptcy courts have found Chapter 13 plans that allow debtors to keep highly valued homes in which they have very little equity while paying virtually nothing to unsecured creditors to be proposed in bad faith.

In the case of *In re Namie*, the debtor proposed to retain his $500,000 home even though his mortgage expenses amounted to five times more than the standard housing expenses in his community. 395 B.R. 594, 596-97 (Bankr. D.S.C. 2008). In fact, the debtor's mortgage expenses exceeded his personal net income. *Id.* The Court held that "debtor's retention of a home that consumes all of his net disposable income, to the detriment of his significant number of unsecured creditors, is not in good faith." *Id.* Although the case at issue is distinguishable from *Namie* in that Appellees mortgage does not consume the entirety of their disposable income, Appellees' proposal

to pay a 1% dividend to unsecured creditors is barely more substantial than the *Namie* debtor.

Similarly, in the case of *In re Stitt*, the debtor proposed to keep a home valued at $305,000 for which he owed $310,000. 403 B.R. 694 (Bankr. D. Idaho 2008). The debtor's mortgage expenses were four times greater than the IRS allowable housing expense for single person households in his county. *Id.* at 704. Furthermore, the location of the debtor's home required significant expense to travel to work. *Id.* at 705. Given the totality of the circumstances, the Court held that "although sincere in his need to reorganize his finances, [the debtor] is unwilling to engage in the kind of meaningful belt–tightening that could reasonably be expected from those earning as much as he does." *Id.* at 707.

Considering the "totality of the circumstances," this Court finds it necessary to reverse the order of the Bankruptcy Court to confirm Appellees' Chapter 13 Plan. Although Appellees' proposed housing expenses satisfy the standards outlined in Section 1325(b)(3) and thus are presumed to have been proposed in good faith, sufficiently aggravating circumstances serve to rebut that presumption. Appellees' proposal to retain a home valued at $600,000 while paying only 1% of the $136,681.46 unsecured debt owed to the IRS is a proposal in bad faith. Furthermore, in making this proposal, Appellees have not asserted a reason why it is necessary to retain a home for which the mortgage payments are over four times the amount of the IRS standard for their area despite the extremely low dividend they seek to pay to their unsecured creditors. Similar to the debtor in *Stitt*, these Appellees seem "unwilling to engage in the kind of meaningful belt tightening" necessary for individuals in bankruptcy. As Appellant states, "debtors [Appellees] have not sought to change their spendthrift ways but rather seek to maintain their pre-petition lifestyle. . . . There is no reason why the debtors cannot find more affordable housing and pay their unsecured creditors a reasonable dividend while still living a comfortable lifestyle." Appellant's Br. at 19.

Although the Bankruptcy Court was correct to emphasize that a purpose of Chapter 13 bankruptcy proceedings is to allow debtors to keep their homes, it is doubtful that Congress intended to protect individuals, like the Appellees, who purchased the home during a time period when they evaded their income taxes. To allow the Appellees to retain their homestead while paying only 1% of the debt owed to unsecured creditors, including the IRS, would be to allow a bargain that too greatly favors the Appellees. In light of the totality of the circumstances, the Bankruptcy Court's Order confirming Appellees' Chapter 13 Plan is reversed.

## Conclusion

Having considered the parties' briefs and the record, the decision of the bankruptcy court to overrule Appellant's good faith objection and to confirm Appellees' Chapter 13 Plan is hereby REVERSED and this case is REMANDED to the Bankruptcy Court.

It is so ORDERED.

SIGNED this 27th day of June, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE